UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

MELISSA WATSON,                    )
                                   )
        Plaintiff,                 )        Civil Action No. 5: 22-203-DCR
                                   )
V.                                 )
                                   )
PROGRESSIVE DIRECT                 )        **MEMORANDUM OPINION**
INSURANCE COMPANY,                 )            **AND ORDER**
                                   )
        Defendant.                 )

                    ***   ***   ***   ***

Melissa Watson totaled her car in May 2021. She then filed a claim seeking to recover her losses with her insurer, Progressive Direct Insurance Company (hereafter, "Progressive"). Progressive deemed her car to be a total loss and paid her $7,228.73 to settle the claim. [*See* Record No. 33-2.] But Watson sued, claiming that Progressive paid her less than what she was owed, violating both her insurance policy and Kentucky law. Progressive has filed a motion to dismiss Watson's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. It alleges that Watson has failed to state a plausible claim for relief. [Record No. 35]

For reasons that follow, Progressive's motion to dismiss will be granted, in part, and denied, in part.

## I. Background

Watson crashed her 2013 Volkswagen Beetle on May 26, 2021. [Record No. 33, ¶ 11] She filed a claim with Progressive the following day, reporting that the car suffered damage from the collision. [Record No. 33-2] Progressive determined that Watson's car was a "total

- 1 -

loss" under her insurance policy.  In other words, "repair of the vehicle [would be] impossible or uneconomical."  [Record No. 33, ¶ 2] Watson's policy provides that when an insured vehicle has been damaged, Progressive is required to pay "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible."  [Record No. 33-1, p. 25]  The policy states that the actual cash value ("ACV") of a vehicle is determined by considering "the market value, age, and condition of the vehicle at the time the loss occurs." [*Id.* at p. 30]  The policy further indicates that Progressive may use "estimating, appraisal, or injury evaluation systems to assist [it] in adjusting claims under this policy and to assist [it] in determining the amount of damages, expenses, or loss payable under this policy," and that "[s]uch systems may be developed by [it] or a third party and may include computer software, databases, and specialized technology." [*Id.* at p. 32]

Progressive contracts with Mitchell International, Inc., to calculate the ACV of a vehicle that is determined to be a total loss.  [Record No. 33, ¶¶ 19-20] Mitchell employs a five-step process to calculate the ACV.  First, it uses a system to locate three comparable vehicles "that are the closest match to the loss vehicle in the same market area."  [Record No. 33-2, pp. 3, 6]  In identifying a comparable vehicle, Mitchell looks to "consumer-based vehicle sources along with inventory directly from Dealerships," as well as certain "sold vehicle records from sources such as [consumer data analytics firm] J.D. Powers."  [*Id.* at p. 6]  The system then adjusts the prices of the comparable vehicles to more closely reflect the price of the damaged vehicle, or "loss vehicle."  [*Id.*]  The system makes adjustments that reflect four differences between the loss vehicle and the comparable vehicles: differences in equipment, mileage, configuration, and consumer purchasing behavior regarding the loss vehicle.  [*Id.*] The final adjustment, which Mitchell calls the Projected Sold Adjustment ("PSA"), is defined

as "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." [*Id.*]

Regarding the PSA, Watson claims that Progressive (through Mitchell) calculates and applies the adjustment in a way that "thumbs the scale against the insured." [*Id.* at ¶ 28] She states that, given the prevalence of internet shopping and "the ease with which consumers can compare the advertised prices of identical vehicles across multiple competing dealerships," car dealerships "no longer price vehicles above market with room for—and the expectation of—negotiation." [*Id.* at ¶ 25] Thus, Watson alleges that Progressive improperly calculates the PSA by "failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the 'sales price' but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase)." [*Id.* at ¶ 29]

Watson further contends that, until July 2021, Progressive discarded relevant data in its calculations by excluding "all transactions in which the list price of a vehicle equaled the sold price," and it continues to exclude some transactions with a list price equal to the sold price. [*Id.* at ¶¶ 30, 31] Conversely, the plaintiff alleges that Progressive has excluded and continues to exclude "all transactions in which the sold price of a vehicle is greater than the list price." [*Id.* at ¶ 32] As Watson explains, purchases from internet sources sometimes result in a sale price that exceeds the listed price because "the advertised prices many dealerships publish on these websites include discounts for consumers who are financing and providing a trade-in," or for consumers paying with cash. [*Id.* at ¶¶ 39, 43] Regarding its knowledge of the PSA, Watson asserts that Progressive has never investigated "whether market realities support the

application of a [PSA]" or "attempt[ed] to verify . . . transactions where the advertised price exceeded sold price."  [*Id.* at ¶ 34]

After adjusting the comparable vehicle prices according to the adjustments listed above, the system next averages the adjusted prices to yield a "base vehicle value."  [Record No. 33-2, p. 6] Next, the system subtracts four types of "loss vehicle adjustments" from the base vehicle value.  [*Id.*]  As relevant here, the system applies an adjustment known as a "condition adjustment," which "account[s] for the condition of the loss vehicle prior to the loss."  [*Id.*] Finally, the system calculates the market value of the vehicle by "applying the loss vehicle adjustments to the base value."  [*Id.*]

Progressive calculated the ACV of Watson's vehicle pursuant to the policy and sent Watson a "Vehicle Valuation Report" on June 2, 2021, explaining the amount that she was owed.  [*Id.* at pp. 1-7] Applying Mitchell's five-step process, the report first identifies three comparable Volkswagen Beetles with list prices of $12,000.00 (Vehicle 1), $11,975.00 (Vehicle 2), and $15,428.00 (Vehicle 3).  [*Id.* at p. 3]  For Vehicle 1, the system applied a PSA of -$784.00, a vehicle configuration adjustment of -$1,786.98, and a mileage adjustment of -$1,833.88, yielding an adjusted price of $7,685.23.  [*Id.* at p. 4]  For Vehicle 2, the system applied a PSA of -$921.00, a mileage adjustment of -$2,884.37, and an equipment adjustment of -139.33, yielding an adjusted price of $8,030.30.  [*Id.* at p. 5]  Finally, Vehicle 3's list price received a PSA of -$1,008.00, a vehicle configuration adjustment of -$2,297.45, and a mileage adjustment of -$2,803.72, yielding an adjusted price of $9,212.31.  [*Id.*]  After averaging the adjusted values of the three comparable vehicles, the report states that the base vehicle value of Watson's car was $8,309.28.  [*Id.*]  Finally, after subtracting $80.55 for fees related to the condition of her vehicle and $1,000.00 for her deductible from the base vehicle value, the

report concluded that Progressive owed Watson a settlement of $7,228.73. [*Id.*] Without the PSA deductions, Watson would have received an ACV payment that was $904.33 higher than the payment that she received. [Record No. 33, ¶ 48] Watson accepted the settlement. [*Id.* at ¶ 49]

Watson filed a purported class action Complaint on August 4, 2022. [Record No. 1] She asserts four counts for relief against Progressive in her Amended Complaint, all involving Progressive's application of the PSA in her Vehicle Valuation Report. In Count 1, she claims that Progressive violated the Kentucky Consumer Protection Act by "failing to disclose material facts regarding its application of an arbitrary [PSA] to comparable vehicles in order to reduce their market value" and "misrepresenting . . . material facts regarding its application of an arbitrary PSA." [Record No. 33, ¶ 63] She also asserts a breach of contract claim (Count 2), contending that Progressive violated her insurance policy by applying the PSA which resulted in the defendant's paying her "less than [her vehicle's] ACV required by the insurance contract." [*Id.* at ¶ 77] Watson also claims that Progressive breached the covenant of good faith and fair dealing by unreasonably exercising its discretion in calculating the ACV of her vehicle when it "intentionally invent[ed] and appl[ied] [PSA's] to undervalue comparable vehicles" (Count 3). [*Id.* at ¶¶ 83, 85] Finally, in Count 4 of the Amended Complaint Watson seeks a declaratory judgment that "Progressive's application of unfounded [PSA's] results in a valuation of less than the ACV Progressive is required under its insurance contracts to pay insureds." [*Id.* at ¶ 93]

## II. Legal Standard

Federal pleading standards demand "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts reviewing motions to

dismiss must accept all "well-pleaded factual allegations" as true and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This standard requires "either 'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). A court may dismiss a party's claim pursuant to Rule 12(b)(6) when the complaint fails to meet this standard.

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). Examination of matters outside the pleadings generally requires conversion of a motion to dismiss to a Rule 56 motion for summary judgment. *Id.* "'However, a court may consider . . . exhibits attached [to the complaint] . . . and exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Id.* at 680-81 (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

In this case, Watson has provided a copy of her insurance policy and the Vehicle Valuation Report from Progressive regarding her claim. [Record Nos. 33-1, 33-2] she refers

to these attachments throughout her Amended Complaint, and both are central to her claims. [*See* Record No. 33, ¶¶ 2, 19-22, 74-77] Thus, the Court considers these exhibits without converting Progressive's motion to one seeking summary judgment.

### III.  Analysis

#### 1.  Violation of the KCPA

Watson first claims that Progressive violated her rights under the Kentucky Consumer Protection Act ("KCPA") by "engag[ing] in one or more deceptive business practices." [Record No. 33, ¶¶ 57-71]  Specifically, she asserts that Progressive violated her statutory rights by "knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce their market value."  [*Id.* at ¶ 62]  Watson further argues that Progressive's misrepresentations "deceive[d] reasonable consumers," and that she "had no way of discerning that [Progressive's] representations were false and misleading, or otherwise learning the facts that [Progressive] had concealed or failed to disclose."  [*Id.* at ¶¶ 66-67]

Progressive argues that Watson's KCPA claim should be dismissed because it does not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  It argues that, because Watson does not "identify a single representation that any person made to her before or after she purchased her Policy, when the representation was made, how the representation was made, and what aspect of the representation was false or misleading," her claim should be dismissed as insufficiently pleaded.  [Record No. 35, p. 16] Additionally and alternatively, Progressive contends that Watson's claim that it engaged in unfair practices fails because she has not alleged facts to demonstrate "the one-sided, oppressive level of contractual unconscionability" required under the KCPA.  [*Id.* at p. 17]

- 7 -

The KCPA prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  KRS 367.170(1).  The "purchase of an insurance policy is a purchase of a 'service' intended to be covered by the Consumer Protection Act."  *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky.1988); *see also Keeton v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723, 726 (Ky. Ct. App. 2008) (noting that a person who purchases a vehicle for personal, family, or household purposes "fit[s] within the protected class of persons who may file claims under the [KCPA]").  The parties agree that the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply to Watson's KCPA claim.  *See Mitchell v. Gen. Motors LLC*, No. 3:13-CV-498, 2014 WL 1319519, at *5 (W.D. Ky. Mar. 31, 2014) (applying Rule 9(b) pleading requirements to plaintiff's KCPA misrepresentation claim).

Rule 9(b) provides that a party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Sixth Circuit has interpreted Rule 9(b)'s pleading requirements to require that a plaintiff claiming fraudulent misrepresentation "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quotation omitted).  Rule 9(b) "may be relaxed when there has been a lack of discovery and the opposing party exclusively holds the information needed for a plaintiff to achieve particularity."  *Mitchell*, 2014 WL 1319519, at * 5.  But "generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)."  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001).

The parties cite dueling, non-binding precedent involving similar facts in support of their respective arguments. Watson points to *Volino v. Progressive Casualty Insurance Company,* in which a district court found that a plaintiff sufficiently alleged that the defendant-insurance companies violated the state's consumer protection laws by "representing that the PSA is 'an adjustment to reflect consumer purchasing behavior." No. 21-CV-6243, 2022 WL 5242894, at *4 (S.D.N.Y. Oct. 6, 2022). There, the court rejected the defendants' argument that their actions were not deceptive because "they disclosed both the amount of the PSA and the purported rationale for that adjustment." *Id.* Instead, it recognized that the defendants' disclosure did not constitute a complete defense because the plaintiff had alleged that the information disclosed was misleading. *Id.* Because the data justifying the nature and application of the PSA was not "'completely and conspicuously' disclosed" to the plaintiff, the Court refused to dismiss the misrepresentation claim. *Id.* (citation omitted).

Progressive, on the other hand, cites several cases in which district courts dismissed a plaintiff's misrepresentation claim for failure to plead with particularity under Rule 9(b). In *Williams v. Progressive Direct Insurance Co.*, a district court dismissed a claim that "the method by which Progressive adjusts a total loss claim . . . is evidence of fraud where the insured is told Progressive will insure her car up to its actual cash value" because the plaintiff "fail[ed] to allege facts Progressive's conduct occurred as part of the sale, lease, or advertisement of the insurance policy." No. 22-510-MAK, 2022 WL 4482726, at *5, 8 (D. Del. Sept. 27, 2022). The court distinguished that claim from claims in which plaintiffs had alleged fraud in connection with the sale or purchase of insurance, finding that the plaintiff's conclusory allegations that "she purchased Progressive's policy in reliance on its

misrepresentations" regarding its application of the PSA did not include any mention of whether those misrepresentations were made at the time of her purchase. *Id.* at *8.

Similarly, in *Petri v. Drive New Jersey Insurance Co.* the court dismissed a plaintiff's misrepresentation claim regarding the defendants' application of a PSA as insufficiently pleaded under Rule 9(b). No. 1:21-cv-20510, 2022 WL 4483437, at *4 (D. N.J. Sept. 26, 2022). It explained that the plaintiffs' statement that "they would not have purchased insurance coverage from [the] Defendant[s]" lacked specificity, leaving the court with the following questions: "When did Plaintiffs purchase their policies? From whom? What, precisely, was represented to them during the marketing and sales process? Why was the calculation of ACV material to their purchase decision?" *Id.* Additionally, the Court found that to the extent the plaintiffs alleged that the defendants committed fraud in the subsequent performance of their insurance policies, that claim was not covered by the state's consumer protection statute. *Id.* at *5.

And in *Grady v. Progressive Direct Insurance Co.*, a district court dismissed a plaintiff's consumer protection claim under Rule 9(b) for the same reason. No. 22-CV-866, slip op. at 8-10 (D. Minn. Nov. 30, 2022). The *Grady* court explained that the claim would be dismissed because the plaintiff did not "plead sufficient factual content about Progressive Direct's underlying misrepresentations or omissions at the time of the sale of her Policy," which was required under the state's consumer protection state. *Id.* Additionally, it found that the plaintiff did not adequately plead a claim for fraudulent omission because the plaintiff did not allege that the insurance company possessed "special knowledge of material facts to which the other party does not have access" and that it would need to "say enough to prevent the words communicated from misleading the other party." *Id.* at *10 (citation omitted).

Here, Watson has sufficiently pleaded a misrepresentation claim under the KCPA. Comparing the language of the operative statutes in the above-mentioned cases explains why her claim succeeds when the other parties' claims did not.  First, as the *Volino* court recognized, to state a claim under New York's consumer protection law a plaintiff must plead that "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception."  2022 WL 5242894, at *4 (citation omitted).

By contrast, the consumer protection statutes in the three cases that Progressive cites contain an express requirement that the complained-of misrepresentation occur at the time of, or somehow in connection to, a sale of a good or service.  *See Williams*, 2022 WL 4482726, at *3 (noting that Delaware consumer protection statute prohibits "[t]he act, use, or employment by any person of any deception, fraud, . . . misrepresentation . . . [or] omission of any material fact . . . *in connection with the sale, lease, receipt, or advertisement of any merchandise*") (emphasis in original) (citing Del. Code Ann. tit. 6, § 2513(a) (West 2021)); *Petri*, 2022 WL 4483437, at *3 (noting that New Jersey consumer protection statute prohibits the "act, use, or employment by any person of any commercial practice that is unconscionable . . . misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate") (citing N.J. Stat. Ann. § 56:8-2 (West 2000)); *Grady*, No. 22-CV-866, slip op. at 6 (recognizing that Minnesota consumer protection statute prohibits "[t]he act, use, or employment by any person of any fraud . . . misrepresentation . . . in connection with the sale of any merchandise") (citing Minn. Stat. Ann. § 325F.69(1)).  Kentucky's consumer protection statute does not limit protection to claims in which an alleged misrepresentation occurred in

connection with a sale.  Accordingly, Progressive's attempt to compare Watson's claim to the claims of the parties in states with such a statutory requirement falls short.

Watson has pleaded a violation of the Kentucky Consumer Protection Act with sufficient specificity.  Like the claim in *Volino*, she stated that Progressive engaged in a deceptive act by misrepresenting the PSA and concealing "the material facts concerning its application of an arbitrary [PSA] to comparable vehicles."  [Record No. 33, ¶ 68]  Assuming her factual allegations to be true, she has adequately stated that Progressive's assurance that the PSA is "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)" is misleading, that Progressive deliberately misrepresented and/or concealed facts about the PSA to deceive consumers, and that she was injured because she received a lesser settlement payment for her total-loss vehicle as a result of the defendant's actions.  [*Id.* at ¶¶ 62, 64, 66, 69]

Watson also asserts that Progressive acted with a reckless intent to deceive by listing specific information in her Complaint that the defendant conceals or fails to disclose when calculating the PSA.  [*See, e.g.,* Record No. 33, ¶¶ 28-44, 64.]  Again, assuming that her allegations are true, Progressive's systematic exclusion of data from the calculation of the PSA "give[s] rise to a 'strong inference' of recklessness," which is sufficient for pleading purposes. *See Bovee*, 272 F.3d at 362 (citing *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999)) (finding that plaintiffs sufficiently pleaded securities fraud because their Amended Complaint "makes specific reference to 'reckless' conduct throughout the pleading" and alleges that defendants knew the risk that the corporation's financial information was misleading).

Progressive's claim that "there are no allegations that Progressive Direct knew that its representations [about the PSA] were false" is unavailing because a plaintiff pleading fraud does not need to show that a defendant knew his statements were misleading. [Record No. 38, p. 11]   Instead, she need only show that a reasonable person would have known that the statements were fraudulent.   *See Bovee*, 272 F.3d at 362 (citing *In re Comshare*, 183 F.3d at 550) ("recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.").   Watson meets Rule 9(b) standards by asserting that a reasonable person would have understood that Progressive's representation that the PSA "reflected consumer purchasing behavior" was false, given its systematic exclusion of several pieces of data from its calculations.   [Record No. 33, ¶¶ 29-34, 64]

Moreover, Progressive's claim that it cannot be held liable under the KCPA because it fully disclosed the PSA in Watson's policy fails, just as the defendants' same argument failed in *Volino*.   [*See* Record No. 35, p. 16.]   Responding to the defendants' claim that they "disclosed both the amount of the PSA and the purported rationale for that adjustment," the *Volino* court found that the defendants' assertion "simply begs the question, because the Complaint alleges that the stated rationale is a sham and Defendants' 'disclosure' is misleading. While Defendants disclosed the amount of the PSA, the Complaint sufficiently alleges that Defendants 'did not do what its policy said it would do,' and that this shortcoming would not be apparent from the face of any disclosure to Plaintiffs."   2022 WL 5242894, at *4.   In the same way here, Progressive cannot sidestep Watson's misrepresentation argument by claiming full disclosure when that same disclosure serves as the basis for Watson's claim.

Next, the undersigned agrees with Progressive that Watson has failed to state a claim under the KCPA for unfair business practices. The KCPA notes that "unfair" as used in the statute is "construed to mean unconscionable." KRS § 367.170(2). While Kentucky courts have not provided a precise definition of unconscionability under the KCPA, the Western District of Kentucky defined the term as any business practice "that misuses a seller's superior resources or bargaining power to enforce grossly unfair terms or conditions on a buyer after formation of a contract." *Garrett v. State Auto & Prop. Cas. Ins. Co.*, No. 3:09-CV-404, 2009 WL 5125812, at *5 (W.D. Ky. Dec. 21, 2009). Applying this definition, the *Garrett* court held that an insurance company's failure to pay interest payments on the plaintiffs' insurance claims as required by Kentucky law was not unconscionable. *Id.* at *6. The court explained that the defendant's noncompliance with the statute did not violate the KCPA because "it does not oppress consumers: they are perfectly capable of demanding the interest payment and of going to court to enforce the obligation where necessary." *Id.*; *see also Argotte v. Nw. Mut. Life Ins.*, 99 F. Supp. 3d 726, 733 (W.D. Ky. 2015) ("To demonstrate a violation of the KCPA in the context of an insurance claim, the insured must show more than a mere failure to settle a claim.") (citation omitted).

In this case, Watson has failed to allege that Progressive's calculation and application of the PSA are unconscionable. But even assuming that Progressive's actions constituted a breach of her insurance policy, the defendant's failure to perform under the contract is legally insufficient to establish unconscionability. *See Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) ("[KCPA] does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present."). Moreover, as Progressive correctly notes, and Watson does not dispute, the

- 14 -

plaintiff's insurance policy provided her with opportunities "to refuse [Progressive's] settlement offer, seek an appraisal, request a higher settlement payment, or demonstrate that she was not able to purchase a vehicle for the amount paid." [Record No. 35, p. 18] Because Watson remained "perfectly capable" of challenging her settlement offer, she cannot claim that Progressive's actions regarding the offer were unconscionable. 2009 WL 5125812, at *6.

## 2.  Breach of Contract

Progressive next argues that Watson's breach of contract claim (Count 2) should be dismissed.  In Count 2, Watson claims that Progressive breached her insurance contract by paying her "less than the vehicle['s] ACV" after applying "improper and unfounded [PSA's] in Mitchell vehicle valuation reports."  [Record No. 33, ¶ 77]  Had Progressive not applied the PSA, Watson claims that she would have received an ACV payment of $904.33 more than she received following her accident.  [*Id.* at ¶ 48]  Progressive argues that Watson did not properly allege a breach of contract claim because she asserts only "vague allegations of underpayment" without claiming "what she believes the ACV of her vehicle was or ought to have been." [Record No. 35, p. 8, 10]  Progressive explains that "generically challeng[ing] the methodology" that it uses to calculate the ACV is insufficient, as "there is no provision of the Policy that requires Progressive Direct to value total-loss vehicles in any way."  [*Id.* at p. 9]  It further argues that Watson cannot claim that it breached her insurance contract because the Total-Loss Regulation in the Kentucky Insurance Code authorizes insurers to "use any source for determining statistically valid fair market values" so long as the source complies with certain criteria.  [*Id.* (citing 806 KAR 12:095 § 7(1)(b)(3)-(6))]  However, because Watson has stated a breach of contract based on the language of her policy, Progressive's motion with respect to Watson's breach of contract claim will be denied.

The parties agree that Kentucky law applies to Watson's breach of contract claim. Under Kentucky law, a plaintiff establishing breach of contract must allege "(1) the existence of a valid contract; (2) breach of that contract; and (3) damages or loss to the plaintiff." *Seye v. Richardson*, No. 2:14-CV-38, 2015 WL 3887053, at *1 (E.D. Ky. June 23, 2015) (citation omitted). Progressive does not dispute that Watson's insurance policy constitutes an enforceable contract. And Watson has sufficiently pleaded that Progressive breached that contract by paying her less than the ACV of her vehicle, and that she suffered $904.33 in damages as a result of that breach.

In *Petri v. New Jersey Insurance Co.,* a case involving virtually identical facts, a New Jersey district court found that the plaintiffs had alleged a breach of contract by claiming that the "Defendants were obligated under their policies to pay the ACV of their totaled vehicles but failed to do so by applying the PSA." No. 1:21-CV-20510, 2022 WL 4483437, at *5 (D.N.J. Sept. 26, 2022). The court noted that the plaintiff's allegations—that "Defendants were obligated to pay a yet-to-be-determined amount of money but paid less than that amount"—were "about as close to a contract law casebook's definition of breach as one could get." *Id.*; *see also Volino v. Progressive Casualty Ins. Co.*, *et al.*, No. 21-CV-6243, 2022 WL 5242894, at *3 (S.D.N.Y. Oct. 6, 2022) (denying defendant's motion to dismiss breach of contract claim because complaint "contains detailed, non-conclusory allegations to support the inference that the PSA is unsupported by current market data and does not reflect current market conditions"); *Smith v. State Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 980 (8th Cir. 2021) (finding that plaintiff sufficiently pleaded breach of contract by claiming that "Farm Bureau breached its duty to consider the truck's fair market value because it based its calculation on 'values of comparable vehicles that have been artificially reduced by an

- 16 -

unjustified [PSA]'"). Regarding damages, the court noted that the plaintiffs need not allege the specific amount they believed they were owed under the policy. *Id.* Instead, the it found sufficient for the plaintiffs to allege "that the ACV for their vehicles was greater than the amount Defendants paid," noting that the amount of damages "will become more precise through the discovery process." *Id.*

Similarly, "[t]he analysis here is simple." *Id.* After deeming Watson's car to be a total loss, Progressive was required to pay her "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." [Record No. 33-1, ¶ 25] The Complaint asserts that Progressive violated that policy by applying a PSA that "do[es] not reflect market realities," resulting in a lesser payment. [Record No. 33, ¶ 23] Watson has included "detailed, non-conclusory allegations" supporting her claim that the PSA is arbitrary: she lists several factors that Progressive fails to consider when calculating the PSA and contends that Progressive does not control for "material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the "sales price" but do not influence the ACV." *Volino*, 2022 WL 5242894, at *3; [*Id.* at ¶¶ 29, 32]. Assuming that Watson's claims regarding Progressive's arbitrary practices are true, the defendant did not pay Watson the ACV of her vehicle in its settlement offer, but "an artificially lower value, in breach of its contractual duty." *Smith*, 18 F.4th at 980; *see also Clippinger v. State Farm Mut. Auto. Ins., Co.*, No. 2:20-CV-02482, 2020 WL 6750357, at *7 (W.D. Tenn. Nov. 17, 2020) (collecting cases) ("Courts have also denied motions to dismiss a plaintiff's breach of contract claim in cases involving auto insurance companies that similarly apply a downward negotiation adjustment when determining payments on total loss claims."). Watson

stated a claim that Progressive breached the terms of her policy when it applied the PSA while calculating her vehicle's ACV.

Watson has also alleged that she incurred damages because of the breach. Specifically, she satisfied Rule 12(b)(6)'s pleading requirements by stating that she suffered $904.33 in damages: the amount by which Progressive reduced her settlement offer after applying the PSA. [Record No. 33, at ¶ 48] Progressive's claim that Watson has not alleged damages with sufficient specificity fails. [*See* Record No. 35, pp. 8-9.] Contrary to Progressive's assertions, Watson need not state how much her car was worth or how much she believed she was owed at this stage of the litigation. *See Petri,* at *5; *Williams v. Progressive Direct Ins. Co.*, No. 22-510-MAK, 2022 WL 4482726, at *10 (D. Del. Sept. 27, 2022) (finding that plaintiff sufficiently alleged damages stemming from breach by stating that application of the PSA "reduce[s] the value of comparable cars, which in turn reduces the base value used to calculate the market value of the total loss car").

Progressive's arguments to dismiss this claim are unavailing. First, Progressive's reliance on Kentucky's Total-Loss Regulation is misplaced. The Total-Loss Regulation provides requirements with which insurers must comply when calculating the value of a total-loss vehicle. *See* KAR 12:095, § 7(1)(b)(3)(a)-(c). But while meeting the regulation's requirements brings Progressive into compliance with Kentucky law, it does not render the defendant immune from breaching the terms of its own contract with a customer. In other words, Kentucky's Total-Loss Regulation sets a regulatory "floor" by establishing minimal standards that insurers must meet. Proof that Progressive meets regulatory standards may be necessary in showing that its system does not constitute a *per se* breach, but it is not sufficient to refute Watson's breach of contract claim. *See Petri*, 2022 WL 4483437, at *5 (noting that

the fact that the New Jersey Department of Banking and Insurance authorized defendant's use of Mitchell Software to calculate the ACV did not undermine plaintiffs' breach of contract claim).

Relatedly, Progressive's claim that Watson agreed to the use of a third-party software system to calculate the ACV in her insurance contract is irrelevant.  As explained above, Watson is not challenging the use of Mitchell Software wholesale, but the software's calculation and application of the PSA to her vehicle's ACV.  *See id.* (recognizing that plaintiffs do not argue that "use of the Mitchell Software [in calculating the ACV] . . . amounts to a *per se* breach of contract," but that defendant breached the contract by applying the PSA when calculating the ACV).

Finally, Progressive's argument that Watson is precluded from asserting a breach of contract claim because she did not challenge her settlement offer either under the terms of her insurance policy or under Kentucky's Total Loss Regulation fails.  [Record No. 35, p. 9]  While the fact that Watson accepted Progressive's settlement offer may affect the damages to which she may be entitled, it does not detract from her claim that Progressive breached her insurance contract by paying her less than she was allegedly owed.  Neither Kentucky law nor the terms of Watson's contract suggest as much.  In short, Watson has sufficiently pleaded that Progressive breached her insurance policy when it paid her less than her vehicle's ACV.

### 3.  Breach of the Covenant of Good Faith and Fair Dealing

Watson alleges in Count 3 that Progressive violated the implied covenant of good faith and fair dealing by "exercis[ing] its discretion unreasonably and in a manner that was arbitrary [and] capricious" through its calculation of the ACV of Watson's vehicle.  [Record No. 33, ¶ 82]  The plaintiff claims that Progressive abused its discretion by "always, uniformly, and

without exception [applying the PSA] to decrease the listed price [of a vehicle] and never to increase the listed price." [*Id.* at ¶ 84] Additionally, Watson alleges that Progressive breached the covenant by:

> a. Intentionally inventing and applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
> b. Failing to conduct any investigation or study or research into whether the Projected Sold Adjustment (i) reflects the used auto market, (ii) is based on accurate data or extrapolations, (iii) is consistent with accepted appraisal methods and practices, or (iv) has any justification whatsoever;
> c. Failing to pay insureds the ACV of their total-loss vehicles;
> d. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims; [and]
> e. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

[*Id.* at ¶ 85]

Watson did not specify in her Complaint whether her claim sounds in tort or in contract. Responding to the plaintiff's tort claim, Progressive contends that Watson cannot say that it acted with bad faith because it "covered Plaintiff's claim and paid Plaintiff for her total-loss vehicle without incident," and because Watson did not "dispute[] the valuation of her vehicle, refuse[] [Progressive's] settlement offer, or [allege] that the amount paid was not capable of allowing [Watson] to procure a replacement vehicle." [Record No. 35, p. 13] In response, Watson only states that "an independent tort claim based on breach of the implied covenant of good faith and fair dealing is actionable where a special relationship exists between the parties, namely in insurance contracts." [Record No. 36, p. 10 (citing *Babbs v. Equity Grp. Ky. Div., LLC*, No. 1:19-CV-64, 2019 WL 5225471, at *2 (E.D. Ky. Feb. 6, 2018))]

Regarding her contract claim, Watson argues that Progressive abused its discretion under the terms of the insurance policy in calculating the ACV of her vehicle because "every

assumption made by Progressive relating to the PSA was to the detriment of insureds and to Progressive's benefit." [Record No. 36, p. 11]  In its reply to Watson's response, Progressive argues that Watson's bad faith claim should be dismissed as duplicative because she did not plead her bad faith claim "in the alternative" to her breach of contract claim.  [Record No. 38, p. 12]  Additionally, Progressive claims that it did not abuse its discretion under the contract in calculating the ACV because "the only discretion [Progressive] exercised in connection with the valuation of Plaintiff's vehicle was hiring Mitchell." [Record No. 38, p. 8]

Watson's claim will be dismissed to the extent that it sounds in tort law.  Kentucky courts recognize a claim for breaching the duty of good faith and fair dealing in the context of insurance contracts.  *See Ennes v. H&R Block E. Tax Servs.*, No. 3:01-CV-447, 2002 WL 226345, at *3 (W.D. Ky. Jan. 11, 2002) ("[T]he only Kentucky decisions that have recognized bad faith tort claims have involved suits between insurers and insureds.") (citations omitted). To allege a tort claim for bad faith under Kentucky law, a plaintiff is required to plead that "(1) the insurer [is] obligated to pay the claim under the terms of the policy; (2) the insurer [lacks] a reasonable basis in law or fact for denying the claim; and (3) . . . the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).  Most relevant here, a plaintiff alleging bad faith under a Kentucky tort law theory must show that her insurer denied her claim.  *See Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801, 2004 WL 2011375, at *8 (Ky. Ct. App. Sept. 10, 2004) ("Kentucky requires a denial of a claim as a prerequisite to bringing a common law bad faith claim against an insurer.").  Watson has not, and indeed cannot, show that Progressive refused to settle her claim.  Accordingly, any claim for breach of the covenant of good faith as a matter of tort law fails.

- 21 -

Under Kentucky law, "[e]very contract contains an implied covenant of good faith and fair dealing." *Mountain Motorsports Paving & Const. LLC v. Yamaha Motor Corp., U.S.A.*, No. 14-CV-76, 2014 WL 5341865, at *5 (E.D. Ky. Oct. 20, 2014) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)).  This covenant "imposes upon the parties a duty to do everything necessary to carry out the agreement." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374, 2014 WL 2113096, at *8 (E.D. Ky. May 20, 2014) (citing *Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003)).  A party that has been vested with discretion under the terms of a contract can violate the covenant by exercising that discretion "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-CV-45, 2015 WL 4464105, at *4 (W.D. Ky. July 21, 2015) (citation omitted); *see also Scatuorchio*, 2014 WL 2113096, at *8 ("[A] party may act in its own interest and not breach the covenant of good faith and fair dealing, as long as its discretion is not used in a way that is contrary to the spirit of the agreement.").

Claims for breach of the implied covenant of good faith and fair dealing are "barred as duplicative when such claims are mere repetitions of the breach of contract claims." *Time Warner*, 2015 WL 4464105, at *4.  In *Back v. Chesapeake Operating, LLC*, this Court dismissed a party's implied covenant claim because the plaintiff alleged that "Chesapeake breached the implied covenant in the same two ways it alleges that Chesapeake breached the express terms of the agreement."  No. 7:16-192, 2018 WL 737609, at *3 (E.D. Ky. Feb. 6, 2018).  The court explained that while a claim that the defendant "engaged in conduct that was impliedly prohibited under the parties' agreement" would have been distinct, the plaintiff's claiming that the defendant "violated its express obligations" under the contract was

duplicative. *Id.*; *see also Time Warner*, 2015 WL 4464105, at *4 (dismissing two claims alleging violations of implied covenant of good faith as duplicative because the claims "repeat Time Warner's breach of contract claim"). *But see Babbs*, 2019 WL 5225471, at *3 (finding that plaintiff's claim of breach of implied covenant of good faith was not duplicative because plaintiff alleged "that Keystone breached the express contract terms and, in the alternative, that Keystone's actions breach a separate implied duty to deal honestly and fairly").

All but one of Watson's claims under Count 3 are duplicative of her breach of contract claim. Her claims related to Progressive's calculation and application of the PSA merely repeat the claims in Count 2 of her Complaint. In other words, by calculating and applying the PSA arbitrarily, Progressive allegedly failed to comply with the express terms of the insurance policy requiring that it pay "the actual cash value of the stolen or damaged property at the time of the loss." [Record No. 33-1, p. 25] Therefore, Watson's claims that Progressive violated the implied covenant of good faith and fair dealing by applying the PSA—the same conduct that she alleges constitutes a breach of its insurance contract—will be dismissed.

The Amended Complaint, however, states one nonrepetitive claim. Watson alleges that Progressive abused its discretion by failing to research whether the PSA "(i) reflects the used auto market, (ii) is based on accurate data or extrapolations, (iii) is consistent with accepted appraisal methods and practices, or (iv) has any justification whatsoever." [Record No. 33, ¶ 85] While Progressive is not expressly required to research how the PSA is calculated in its insurance policy, its commitment to pay the ACV of a total-loss vehicle carries the implied promise that the defendant ensure that its calculations reflect market realities. *See Clubspecialists Int'l, LLC v. Keeneland Ass'n, Inc.*, No. 5:16-CV-345, 2017 WL 522945, at *5 (E.D. Ky. Feb. 8, 2017) (noting that plaintiff alleged claim for violating implied covenant

of good faith by asserting that defendant gave pretextual reasons for terminating contract). And while Progressive correctly states that it is authorized to contract with a third-party software system like Mitchell, Progressive nonetheless retains the obligation to ensure that the methods used by Mitchell are justifiable. Watson has plausibly alleged that Progressive abused its discretion in calculating the ACV by failing to investigate the PSA.

### 4. Declaratory Judgment

Finally, in Count 4, Watson seeks a declaration that Progressive breaches the terms of its insurance policy by "bas[ing] the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous [PSA's]." [Record No. 33, ¶ 90] Progressive argues that the plaintiff's declaratory judgment claim should be dismissed for lack of standing. [Record No. 35, pp. 19-20] As Progressive explains, the fact that Watson "*might* someday be in another automobile accident" is insufficient to establish a substantial likelihood that she will be injured in the future, which she must do to seek declaratory relief from the Court. [*Id.* at p. 20] Additionally, it contends that Watson's claim for declaratory relief should be dismissed because the claim "seeks a remedy that is duplicative of her breach of contract claim." [*Id.*]

In response, Watson asserts that she has sufficiently alleged an ongoing harm to establish standing, as "Progressive continues to stand by its imposition of the PSA, the application of which caused Plaintiff to sustain monetary harm." [Record No. 36, p. 16] She also argues that the Court has discretion to consider her declaratory judgment claim even if it is duplicative of her breach of contract claim, as "it is more sensible to analyze potential overlap and duplication [of the two claims] . . . after the case develops." [*Id.* at p. 17]

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).   A party seeking a declaratory judgment must establish that an "actual controversy" exists, or that the party has standing to bring a claim.   To establish standing under Article III, a plaintiff must demonstrate "(1) that [she has] suffered an injury-in-fact that was (2) caused by Defendants' conduct and that (3) this Court can likely redress the injury with a decision for Plaintiff[]." *Kanuszewski v. Mich. Dept. of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (citation omitted).   A plaintiff is required to establish standing for each form of relief sought, as "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 (1996).

Regarding the first requirement, a plaintiff must show that she has suffered an injury-in-fact that is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).   A plaintiff seeking declaratory relief can meet this requirement "as long as there is a 'substantial risk' that the harm will occur" and the plaintiff has not merely alleged "*possible* future injury." *Kanuszewski*, 927 F.3d at 405 (quoting *Clapper*, 568 U.S. at 409).   A plaintiff alleging a past harm as the basis for standing may not seek declaratory relief because "the fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that' it will occur in the future, as is required for injunctive relief." *Id.* at 406 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)).

Watson's claim fails because she has not pleaded a request for prospective relief. Instead, her claim involves a dispute over conduct that already occurred: namely, that Progressive breached the terms of her insurance contract when it calculated the ACV of her vehicle.  She has not demonstrated that she is likely to suffer future harm from Progressive's

actions; therefore, her claim for declaratory relief will be dismissed. *See Williams v. Progressive Direct Ins. Co.*, No. 22-510-MAK, 2022 WL 4482726, at *11 (D. Del. Sept. 27, 2022) (dismissing claim because plaintiff sought "'backward-looking' relief, not 'forward-looking' relief from a 'future injury'" in claim seeking declaration that Progressive breached insurance policy by applying PSA's); *Petri v. Drive N.J. Ins. Co.*, *et al.*, No. 1:21-CV-20510, 2022 WL 4483437, at *7 (D.N.J. Sept. 26, 2022) (noting that "[d]eclaratory judgment cannot be granted for [the] purpose" of seeking a declaration that defendant's "past behavior is a breach of their contracts and a violation of law").

And even if Watson could demonstrate an injury in fact, Progressive correctly notes that her claim for declaratory relief should be dismissed as duplicative of her breach of contract claim. *See Sweet v. Indianapolis Jet Ctr., Inc.*, 918 F. Supp. 2d 801, 804 (S.D. Ind. 2013) (declining to consider claim for declaratory relief because it is "wholly subsumed by [plaintiff's] claim for breach of contract" and "would add nothing to the relief he will be entitled to if he ultimately is successful in his breach of contract claim"); *Petri*, 2022 WL 4483437, at *7 ("[I]n any event, [the issues addressed in declaratory judgment claim] will be adjudicated by way of Plaintiffs' breach of contract claims; any declaratory relief would be duplicative.").

### IV.  Conclusion

Progressive's motion to dismiss will be granted in part and denied in part.  Watson has sufficiently pleaded a claim for relief under the KCPA (Count 1) by alleging that Progressive deceived consumers by misrepresenting and failing to disclose the nature and application of the PSA.  Watson has also sufficiently pleaded a breach of contract claim (Count 2) by stating that Progressive violated the terms of its insurance policy when it paid her $904.33 less than

the ACV of her vehicle.  Watson's claim that Progressive violated the implied covenant of good faith and fair dealing (Count 3) is barred as duplicative of her breach of contract claim, except for her allegation that Progressive failed to properly research the PSA.  Finally, Watson's claim for a declaratory judgment (Count 4) fails and will be dismissed because Watson lacks standing to seek prospective relief.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Progressive Direct Insurance Company's motion to dismiss for failure to state a claim [Record No. 35] is **GRANTED, IN PART,** and **DENIED, IN PART**, consistent with this Memorandum Opinion and Order.

Dated: December 30, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 27 -