UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MELISSA WATSON, individually and purportedly on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 5: 22-203-DCR |
| V. | ) ) ) | **MEMORANDUM OPINION** |
| PROGRESSIVE DIRECT INSURANCE COMPANY, | ) ) ) ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Third Party Subpoena Respondents Mitchell International, Inc. and J.D. Power ("Third Party Subpoena Respondents") have filed a motion to seal exhibits as part of Plaintiff Melissa Watson's pending motion for class certification, pursuant to Local Rule 5.6 and the Protective Order governing this matter. [Record No. 83] Specifically, the Third Party Subpoena Respondents seek to seal five exhibits containing sensitive and proprietary business information. They are labeled Exhibits 1, 5, 7, 8 and 10. The Third Party Subpoena Respondents have shown good cause for the requested relief; therefore, the motion will be granted.

**I.**

Mitchell International is a third-party vendor who contracts with insurance companies like Progressive to provide vehicle valuation reports through its "WorkCenter Total Loss" software. The software estimates the actual value of a vehicle deemed a total loss following an accident. To determine the actual value of a total loss vehicle, the WorkCenter Total Loss

software applies what is called a "Projected Sold Adjustment." In turn, J.D. Power contracts with Mitchell to provide data and statistical methodology for the Projected Sold Adjustment.

Neither Mitchell nor J.D. Power are parties in this matter. However, each produced proprietary business information and trade secrets material pursuant to the plaintiff's third-party document production and deposition subpoenas. Mitchell reports producing over 1,000 pages of documents. Likewise, J.D. Power allegedly produced numerous pages of documents and millions of data records. The Third Party Subpoena Respondents' corporate representatives collectively provided more than twelve hours of deposition testimony.

The Third Party Subpoena Respondents referenced the terms of the Protective Order governing this matter as they complied with the subpoenas. [Record No. 51] The Protective Order provides the parties with confidentiality protections for trade secrets, competitively sensitive technical marketing, financial, sales and other confidential business information by designating such material "Confidential." It also provides confidentiality protections for proprietary data and any information copied, extracted, or compiled by designating such material "Highly Confidential – Outside Counsel's Eyes Only." In accordance with these provisions, the Third Party Subpoena Respondents designated their production documents, data, and deposition testimony as Confidential or Highly Confidential.

Plaintiff Watson filed a motion for class certification on February 2, 2024. [Record No. 76] She subsequently moved to seal excerpts of the motion and certain exhibits based on their confidentiality labeling. However, the Protective Order only provides ten days for a designating party to address a motion to seal, a shorter timeframe than offered by the Local Rules. The Third Party Subpoena Respondents claim that the parties "misunderstood the interplay between the Protective Order and the Local Rules governing motion practice."

[Record No. 83]  As a result, the Court denied Watson's motion to seal based on the terms of the Protective Order, noting that "[t]he party designating the documents as protected documents has failed to explain within the time provided by the Protective Order . . . and in compliance with the Local Rules why such [documents] should remain under seal." [Record No. 79]  The Third Party Subpoena Respondents have filed the instant motion to seal Exhibits 1, 5, 7, 8, and 10 on the merits.

## II.

While there is a common-law right of access to judicial records, this right "is not absolute." *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  For instance, courts may deny public access to judicial records containing highly proprietary and competitively sensitive business information. *See, e.g., In re General Motors Air Conditioning Mktg. & Sales Practices Lit.*, 2023 WL 31992, at *3 (E.D. Mich. Jan. 19, 2023).  To show good cause for sealing documents, a party must demonstrate: (1) a compelling interest warrants sealing the records; (2) the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored.  *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016).  Whether good cause exists for sealing is a decision left to the discretion of the trial court.  *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983).

## III.

The Third Party Subpoena Respondents have shown a compelling interest in sealing their proprietary, trade secret information. *See, e.g., Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 2017 WL 4168290, at *2 (S.D. Ohio Sept. 20, 2017) ("[P]rotecting confidential information that would otherwise allow competitors an inside look at a company's business

strategies is a compelling reason to restrict public access to filings."). First, the graphs in Exhibit 1 depict calculations that an expert witness derived from J.D. Power's proprietary data. The Third Party Subpoena Respondents argue that revealing this proprietary data used in the WorkCenter Total Loss software could allow competitors to undercut them in the market.[1] *See Burton v. Zwicker & Assoc.*, 2012 WL 12925759, at *1 (E.D. Ky. Sep. 24, 2021) ("[C]ourts traditionally require that the party wishing to have confidential information in the court record kept under seal to show that disclosure of the information will result in some sort of serious competitive or financial harm.") They further note that "public disclosure of the graphs threatens to harm Mitchell and J.D. Power's competitive position and induce a breach of contract." [Record No. 83]

For the same reasons, the Third Party Subpoena Respondents claim that "isolated portions of reports prepared by Plaintiff's expert witnesses should be permanently sealed" in Exhibits 7 and 8 because they relay specific features of proprietary software and methodologies for analyzing data. Exhibits 5 and 10 are excerpts of deposition transcripts. In addition to discussions regarding "proprietary data and methodology for the Projected Sold Adjustment, the depositions reflect features of Mitchell's proprietary WorkCenter Total Loss software, proprietary business information, and trade secrets." *Id*.

The Third Party Subpoena Respondents satisfy the second prong because they would likely to suffer a specific and concrete harm if the information in the exhibits became public. The threat of competitors undercutting the Third Party Subpoena Respondents' market

---

[1] After labeling the documents and deposition testimony pursuant to the classifications outlined in the Protective Order, "J.D. Power made the proprietary data available for Plaintiff's expert's supervised review at a law firm that has no connection to or involvement in this case." [Record No. 83]

positions if proprietary information becomes public has been detailed in the foregoing discussion.

Finally, the Third Party Subpoena Respondents attest that they "worked cooperatively with Plaintiff [Watson] and Progressive to narrowly tailor their confidentiality designations" and "limit[] designations and redactions to only those portions of the documents, reports, and transcripts that contain commercially sensitive and proprietary trade secret business information." *Id*. This satisfies the third prong necessary to show good cause to seal.

### IV.

Being sufficiently advised, it is hereby

**ORDERED** that the Third Party Subpoena Respondents' motion to seal Exhibits 1, 5, 7, 8, and 10 [Record No. 83] is **GRANTED**.

Dated: March 4, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky